Kyle S. Hirsch, Esq. (#024155)
Amanda L. Cartwright, Esq. (#030488)
**BRYAN CAVE LLP**
Two N. Central Avenue, Suite 2100
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Email: kyle.hirsch@bryancave.com
       amanda.cartwright@bryancave.com

Attorneys for UMB Bank, n.a.

**IN THE UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| In re: | Case No. 2:17-bk-00594-BMW |
|---|---|
| GREEN FUEL TECHNOLOGIES, L.L.C. | Chapter 11 |
| Debtor. | **OBJECTION TO EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY CERTAIN PREPETITION CLAIMS IN THE ORDINARY COURSE OF ITS BUSINESS**<br><br>**Hearing Date: March 9, 2017**<br>**Hearing Time: 11:00 a.m.** |

Secured Creditor UMB Bank, n.a. ("UMB"), by and through undersigned counsel, hereby submits this objection (the "Objection") to the *Emergency Motion For Order Authorizing Debtor To Pay Certain Prepetition Claims In The Ordinary Course Of Its Business* filed by the above-captioned debtor (the "Debtor") on February 15, 2017 [DE #45] ("Motion").

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION.**

The Debtor asks the Court to approve payment of prepetition claims totaling over $260,000, placing misguided reliance on Bankruptcy Code section 105 and the doctrine of necessity. Absent circumstances not applicable here, the Bankruptcy Code prohibits the requested payment of prepetition claims outside of the context of a plan of reorganization. All creditors remain at risk, as the estate is at or near administrative insolvency. No legal basis permits preferential payments to the unsecured creditors designated by the Debtor to the detriment of all

other estate creditors. Accordingly, the Court should deny the Motion, leaving undisturbed Congress' specified priority scheme.

## II. RELEVANT FACTUAL BACKGROUND.

1. On January 20, 2017 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code").

2. The Debtor continues to operate its business as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The Debtor owes UMB no less than $729,379.77 pursuant to a prepetition line of credit loan (as the same has been modified from time to time, "Loan") extended by UMB on April 30, 2012, that is secured by properly perfected liens in virtually all of the Debtor's personal property assets ("Collateral"). *See* DE #20, Exs. A-B. The Debtor admits that it owes UMB $701,000. *See* DE #38, at 8 ¶ 2.2.

5. By August 2015, the Debtor's financial condition had materially declined causing a number of covenant defaults under the Loan. The Debtor acknowledged such defaults in a series of six forbearance agreements, the first of which is dated August 31, 2015, and the last of which expired by its own terms on November 30, 2016. The Debtor failed to find a replacement lender or otherwise repay the Loan, and refused to comply with UMB's lawful demand for repayment in full. The Debtor further breached its agreement with UMB by diverting nearly $700,000 in customer collections to new accounts opened at another financial institution in order to thwart UMB's recovery efforts.

6. UMB commenced a state court lawsuit over a month later, on January 10, 2017, seeking (among other things) the appointment of a receiver. The Debtor filed this case on January 20, 2017, less than one hour before the return evidentiary hearing on the receivership application.

7.      Between November 30, 2016, and the Petition Date, according to the Debtor's own records, the Debtor's <u>total</u> accounts receivable has declined by nearly $700,000 - down from nearly $1.1 million to just over $400,000.  *See* DE #38, Exs. C-D.

8.      Even after collecting receivables of nearly $700,000, the Debtor asserted a Petition Date cash balance of $230,000 - a $450,000 cash depletion in less than two months immediately prepetition.  *See* DE #38, at 1 ¶ 5.

9.      On January 24, 2017, the Debtor filed a motion seeking authority to use cash collateral.  DE #9.  UMB objected to the cash collateral motion and filed a separate motion seeking to convert or dismiss the Debtor's bankruptcy case for cause.  DE ##26, 43.

10.     The day before the evidentiary cash collateral hearing, the Debtor filed the Motion. At the conclusion of the evidentiary hearing, the Court authorized the Debtor's interim use of cash collateral only through March 9, 2017, in order to evaluate the Motion.  *See* DE #48.

11.     In the Motion,[1] the Debtor seeks authority to pay prepetition claims totaling $260,093.58, as follows: (i) Independent Electric Supply ("IES") in the amount of $48,270.79; (ii) Marco Crane & Rigging ("Marco") in the amount of $17,884.80; (iii) Pantheon in the amount of $49,962.02; (iv) Gerdau in the amount of $25,934.83; (v) Ritoch Powell & Associates in the amount of $101,808.46; (vi) Smith County Survey in the amount of $13,450.00; and (vii) Soils Engineering in the amount of $2,782.68.  The Debtor asserts that the inability to pay these creditors' prepetition claims ***could*** result in the imposition of liens on non-estate property or result in complaints or bond claims; ***could*** jeopardize future projects the Debtor ***hopes*** to obtain; and ***may*** jeopardize the Debtor's ability to collect some accounts receivable due to the Debtor.  *See* Motion, at 5-7.

### III.    **LEGAL ARGUMENT.**

Bankruptcy Code section 507 specifies the priority scheme for payment of claims in a bankruptcy case.  In the Motion, the Debtor relies upon the equitable authority of Section 105, which cannot be used to circumvent express Bankruptcy Code provisions; and the "necessity of

---

[1]     The declaration of the Debtor's principal, John Casey, that accompanies the Motion ("Declaration") [DE #46], appears to omit Page 4.  UMB reserves all of its rights relating thereto.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

payment" doctrine that is expressly rejected in this circuit. The Debtor therefore lacks any viable legal argument to deviate from the Bankruptcy Code's priority scheme to prefer certain unsecured creditors over all other estate creditors, warranting denial of the Motion.

**A.  Section 105 Does Not Permit Deviation From Express Code Provisions.**

The Debtor misplaces reliance on Bankruptcy Code section 105, which authorizes a bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Despite the broad statutory language, the Supreme Court verified the limited scope of Section 105:

> It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.

*Law v. Siegel*, 134 S.Ct. 1188, 1194 (2014) (citing 2 Collier on Bankruptcy ¶ 105.01[2], p. 105–6 (16th ed. 2013)). The Debtor cites only cases predating *Law v. Siegel* for the proposition that Section 105 permits a bankruptcy court to override the statutory priority of claims as set forth in the Bankruptcy Code. *See* Motion, at 10-11 (citing to cases ranging in dates from 1882-2002).

Section 507(a) of the Bankruptcy Code expressly establishes claim priority, and distributions to prepetition creditors must follow the Bankruptcy Code's priority scheme within the context of a plan of reorganization. *See* 11 U.S.C. § 507(a); Fed. R. Bankr. P. 3021. Section 105 therefore does not provide legal support to elevate payment of certain vendors' unsecured prepetition claims to a higher, superadministrative-level priority.

**B.  The Doctrine Of Necessity Does Not Permit The Debtor To Pay Prepetition Unsecured Creditors Outside Of A Plan.**

The Debtor completely ignored controlling Ninth Circuit law that rejects the "necessity of payment" doctrine as a means to alter the Bankruptcy Code's priority scheme. *Matter of B & W Enters., Inc.*, 713 F.2d 534, 537 (9th Cir. 1983) (affirming the bankruptcy court's avoidance of certain payments of prepetition claims made by a debtor in Chapter 11 proceedings before conversion to Chapter 7). In *B&W Enterprises*, the debtor operated a trucking company and

elected to pay prepetition claims to certain creditors - a parts and repair vendor, a fuel vendor, and a supplies vendor - concluding that each of these creditors was "necessary and essential to the [postpetition] operation of the debtor's business." *Id.*, at 535. The Ninth Circuit analyzed the "necessity of payment" rule, observing its Bankruptcy Act origins applicable to railroad reorganizations. The rule does not exist in the Bankruptcy Code, and the Ninth Circuit appropriately refused to recognize the rule beyond the context of railroad reorganizations finding it "unwise to tamper with the statutory priority scheme devised by Congress" in the Bankruptcy Code. *Id.*, at 537.

*B&W Enterprises* remains good law in this circuit, and has been applied uniformly to reject debtors' attempts to use the necessity of payment doctrine to pay certain preferred prepetition creditors outside of a plan of reorganization. *See, e.g., In re Berry Good, LLC*, 400 B.R. 741, 746 (Bankr. D. Ariz. 2008); *In re Timberhouse Post & Beam, Ltd.*, 196 B.R. 547, 549–50 (Bankr. D. Mont. 1996); *In re: EcoSmart, Inc.*, Case No. 2:15-BK-27139-RK, 2015 WL 9274245, at *4 (Bankr. C.D. Cal. Dec. 18, 2015). The Debtor's Motion, like other debtors' identical attempts, finds no basis in the law and should be denied.

The Debtor failed to identify any controlling authority upholding a debtor's right to prefer certain prepetition creditors contrary to the express provisions of Section 507 of the Bankruptcy Code. The Debtor cited inapplicable Ninth Circuit cases that evaluate a debtor's good faith in connection with obtaining postpetition financing under Bankruptcy Code section 364. *See* Motion, at 12 (*citing In re Adams Apple, Inc.*, 829 F.2d 1484, 1486, 1490 (9th Cir. 1987); and *In re Cooper Commons, LLC*, 424 F.3d 963, 969 (9th Cir. 2005), *amended and superseded* at 430 F.3d 1215 (9th Cir. 2005)). Those cases, in pure dicta, identify circumstances not applicable to the Debtor where some courts authorized payment of prepetition claims. Neither of the Ninth Circuit cases cited by the Debtor abrogates *B & W Enterprises*' limitation of the "necessity of payment" rule to railroad cases only.

To the extent it even matters given the Ninth Circuit's strict prohibition on preferring prepetition creditors, UMB disputes that any of the creditors targeted in the Motion qualify as "critical vendors." The Debtor only pursues a "critical vendor" argument as to IES, arguing

5

<small>BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000</small>

811456.4\0547940

Case 2:17-bk-00594-BMW    Doc 64    Filed 03/06/17    Entered 03/06/17 09:54:11    Desc
Main Document    Page 5 of 9

without evidence that the Debtor "must remain on good terms" with IES to readily obtain electric parts. The soft-pedaled argument suggests a way to otherwise negotiate "good terms" without paying prepetition claims, or that parts may still be acquired with more planning or on a slightly less convenient schedule. As presented, IES does not qualify as a "critical vendor."

The Debtor does not offer a single, concrete example of actual harm if these creditors are not paid ahead of all other estate creditors. The Debtor's argument relies heavily on a hypothetical parade of horribles, proposing that (1) these specific unpaid creditors *could* file liens against non-estate property, which *may* jeopardize the Debtor's ability to collect on its accounts receivable; or (2) there is *a chance* that these specific creditors, if not immediately paid their prepetition unsecured claims, *may* file complaints with the general contractors that *may* negatively impact the Debtor's reputation and ability to obtain future contracts. These are not circumstances unique to this Debtor; and the potential risks described by the Debtor exist in virtually all bankruptcy cases. Creditors who engaged in business with the Debtor prepetition must weigh the likelihood of recovering their prepetition claim against the opportunity for future business with the Debtor. The Court should not permit the Debtor to divert payment on prepetition claims based on potential harm, especially where no unique circumstances exist.

Even assuming, *arguendo*, that creditors enforce lien rights against non-estate property as a result of the Debtor's non-payment of prepetition claims, creditors are not permitted to obtain possession of property of the estate; exercise control over property of the estate; enforce any lien against property of the estate; collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; or setoff any debt owing to the debtor that arose before the commencement of the case. 11 U.S.C. § 362(a). Thus, while Section 546 may allow vendors to perfect and maintain materialman's liens against non-estate property, withholding or offsetting payments owed to the Debtor may violate the automatic stay for which the Bankruptcy Code provides specific relief. *See* 11 U.S.C. § 362(a), (k). The Debtor is therefore protected against creditors reluctant to pay accounts receivable, thereby limiting the allegedly drastic impact of not paying prepetition claims outside of a plan.

The Motion makes little financial sense. The Debtor seeks to distribute over $260,000 of cash in hopes of recovering $500,000 in receivables, resulting in a net loss to the estate of $20,000. The Debtor will suffer immediate negative impacts with certainty if the Court grants the Motion, and may only hypothetically suffer long-term negative impacts if the Court denies the Motion. Practically speaking, the Debtor has a demonstrated challenge collecting accounts receivable regardless of prepetition claim enforcement actions taken by creditors, as the lions' share of the Debtor's outstanding accounts receivable is aged well beyond 60 days. The Debtor's focus should be on prompt collections rather than preferred payments, especially because the Debtor is in or near administrative insolvency.

The Debtor's concern over reputational harm lacks merit. Whether warranted or not, a debtor in bankruptcy bears a reputational blow simply by virtue of filing a bankruptcy petition. Any reputational harm, if any, caused by non-payment of unsecured prepetition claims does not warrant deviating from the Bankruptcy Code's express priority scheme.

### C. UMB Is Entitled To Adequate Protection.

The Debtor has failed to propose any adequate protection for UMB, and therefore has failed to sustain its burden of proof on the issue. 11 U.S.C. § 363(p)(1). To the extent the Court considers granting the relief requested in the Motion, UMB is entitled to adequate protection. 11 U.S.C. § 363(e).

### D. No Basis For Waiver Of Bankruptcy Rule 6004(h).

Federal Rule of Bankruptcy Procedure 6004(h) requires a 14-day stay of any order authorizing the use of estate property "unless the court orders otherwise." The Debtor has simply requested, without any rationale, a waiver of the 14-day stay of the effectiveness of such order. UMB objects to the groundless waiver of the stay.

## IV. CONCLUSION.

UMB continues to oppose the use of its cash collateral for any reason, including to fund the Debtor's prepetition unsecured obligations. The Debtor does not have the legal authority or the financial wherewithal to make payments to prepetition unsecured creditors while leaving

UMB, a secured creditor holding higher priority, unprotected. The estate cannot afford to further deplete cash to pay prepetition unsecured claims outside the context of a confirmed plan, thereby harming all of the Debtor's creditors, including UMB. Based on the foregoing, UMB respectfully requests that the Court enter an order:

    a. Denying the Motion; and

    b. Granting UMB such other and further relief as the Court deems appropriate under the circumstances.

DATED this 6th day of March, 2017.

                      BRYAN CAVE LLP


                      By /s/ ALC, #030488
                         Kyle S. Hirsch
                         Amanda L. Cartwright
                         Two N. Central Avenue, Suite 2100
                         Phoenix, AZ 85004-4406
                         Attorneys for UMB Bank, n.a.

1  COPY served via email and/or US Mail this 6th day of March, 2017, upon:

2  Pernell W. McGuire, Esq.
   Preston Gardner, Esq.
3  Davis Miles McGuire Gardner, PLLC
   40 E. Rio Salado Parkway
4  Ste. 425
   Tempe, AZ 85281
5  pmcguire@davismiles.com
   pgardner@davismiles.com
6  Attorneys for Green Fuel Technologies, L.L.C.

7  Renee Sandler Shamblin
   Office of the United States Trustee
8  230 N. First Avenue, Suite 204
   Phoenix, AZ 85003-1706
9  renee.s.shamblin@usdoj.gov

10 Patrick A. Clisham, Esq.
   ENGELMAN BERGER, P.C.
11 3636 N. Central Avenue, Suite 700
   Phoenix, AZ 85012
12 pac@eblawyers.com
   Attorneys for Titan Bank, N.A.

13

14

15 /s/ Sally Erwin

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000