Kyle S. Hirsch, Esq. (#024155)
Amanda L. Cartwright, Esq. (#030488)
**BRYAN CAVE LLP**
Two N. Central Avenue, Suite 2100
Phoenix, AZ 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Email: kyle.hirsch@bryancave.com
amanda.cartwright@bryancave.com

Attorneys for UMB Bank, n.a.

**IN THE UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>GREEN FUEL TECHNOLOGIES, L.L.C.<br><br>Debtor. | Case No. 2:17-bk-00594-BMW<br><br>Chapter 11<br><br>**OBJECTION TO DISCLOSURE STATEMENT**<br><br>**Hearing Date: May 3, 2017**<br>**Hearing Time: 10:15 a.m.** |

Secured Creditor UMB Bank, n.a. ("UMB"), by and through undersigned counsel, hereby objects to the Disclosure Statement [DE #103] filed by the above-captioned debtor (the "Debtor") on April 11, 2017. In support hereof, UMB respectfully states as follows:

**I.  BACKGROUND.**

1. On January 20, 2017 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. ("Bankruptcy Code").

2. The Debtor continues to operate its business as a debtor in possession under Sections 1107 and 1108 of the Bankruptcy Code.

3. This Court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The Debtor owes UMB no less than $729,379.77 pursuant to a prepetition line of credit loan (as the same has been modified from time to time, "Loan") extended by UMB on April

30, 2012, that is secured by properly perfected liens in virtually all of the Debtor's personal property assets ("Collateral"). *See* DE #20, Exs. A-B. The Debtor admits that it owes UMB $701,000. *See* DE #38, at 8 ¶ 2.2.

5. By August 2015, the Debtor's financial condition had materially declined causing a number of covenant defaults under the Loan. The Debtor acknowledged such defaults in a series of six forbearance agreements, the first of which is dated August 31, 2015, and the last of which expired by its own terms on November 30, 2016. The Debtor failed to find a replacement lender or otherwise repay the Loan, and refused to comply with UMB's lawful demand for repayment in full. The Debtor further breached its agreement with UMB by diverting nearly $700,000 in customer collections to new accounts opened at another financial institution in order to thwart UMB's recovery efforts.

6. UMB commenced a state court lawsuit over a month later, on January 10, 2017, seeking (among other things) the appointment of a receiver. The Debtor filed this case on January 20, 2017, less than one hour before the return evidentiary hearing on the receivership application.

7. Between November 30, 2016, and the Petition Date, according to the Debtor's own records, the Debtor's total accounts receivable has declined by nearly $700,000 - down from nearly $1.1 million to just over $400,000. *See* DE #38, Exs. C-D.

8. Even after collecting receivables of nearly $700,000, the Debtor asserted a Petition Date cash balance of $230,000 - a $450,000 cash depletion in less than two months immediately prepetition. *See* DE #38, at 1 ¶ 5.

9. The Debtor's post-petition cash position is even more dire.

10. On February 15, 2017, the Debtor filed the *Emergency Motion For Order Authorizing Debtor To Pay Certain Prepetition Claims In The Ordinary Course Of Its Business* [DE #45], and later filed its supplement thereto [DE #65], seeking authority to pay the pre-petition claims of Pantheon Supply LLC ("Pantheon") in the amount of $49,962.02, Marco Crane & Rigging ("Marco") in the amount of $17,884.80, and Gerdau Steel ("Gerdau") in the amount of $25,934.83 on a critical vendor theory.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

2
813979.2\0547940
Case 2:17-bk-00594-BMW    Doc 122    Filed 05/01/17    Entered 05/01/17 14:59:57    Desc
Main Document    Page 2 of 7

11. On April 18, 2017, the Court ruled in favor of the Debtor; however, the Court conditioned the Debtor's ability to make these payments, stating that the Debtor must maintain at least $70,000 in its bank account in order to make payments to these creditors, thus requiring the Debtor to have at least approximately $140,000 in cash in order to make these payments. [DE #105]

12. Upon information and belief, the Debtor's DIP account balance has never exceeded this threshold since the date the Court ruled on the critical vendor motion, and as such, the Debtor has been unable to make these payments previously approved by the Court.

13. On April 11, 2017, the Debtor filed its Disclosure Statement [DE #102] and Plan of Reorganization Dated April 10, 2017 [DE #103] (the "Plan"). The Debtor filed a motion seeking expedited hearing on the Disclosure Statement, which the Court set for May 3, 2017.

14. This Objection only addresses the Disclosure Statement. UMB has numerous objections to the Plan, which it will address in a separate pleading to be filed later in this case. UMB expressly reserves all rights with respect to the Plan.

## II. DEFICIENCIES IN THE DEBTOR'S DISCLOSURE STATEMENT.

15. UMB noted the following deficiencies in the Debtor's Disclosure Statement, each of which require resolution prior to the approval of the Disclosure Statement:

   a. The Disclosure Statement provides that Mr. Casey will waive his $1,750,000 pre-petition claim [Disclosure Statement, p.16]; however, the Debtor fails to provide any information to support this claim amount, and what value, if any, the waiver of this claim provides to the estate.

   b. The Disclosure Statement provides that John and Kelly Casey "have contributed post-petition funds in an unknown amount to help pay critical suppliers." [Disclosure Statement, p.16] The Disclosure Statement fails to set forth if the Caseys intend to waive this post-petition claim, and fails to set forth what the amount of this claim actually is. There is also no reason why the Caseys cannot ascertain how much money they have contributed to buttress the Debtor's

BRYAN CAVE LLP
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
(602) 364-7000

3

operations. The Debtor's Plan contemplates full payment to all creditors based upon the Debtor's cash flow. It is critically important for creditors to understand how much the Debtor's cash flow can support the Plan payments. Understanding the historical payments made by the Caseys to support the Debtor's business is an important piece of information necessary to provide creditors with an informed basis to evaluate the feasibility of the Plan and for voting purposes.

c. The Disclosure Statement provides that John and Kelly Casey "will contribute sufficient additional funds, if necessary, to cover any shortfalls in plan payments for the Debtor." [Disclosure Statement, p.16] However, the Disclosure Statement and Plan are utterly devoid of any information supporting the financial condition of the Caseys, and their ability to fund such payments. The Disclosure Statement is also contradictory in that the Plan purports to be supported by operating revenue, so there should be no reason the Caseys would need to cover plan payment shortfalls. This apparent contradiction should be further explained.

d. The Disclosure Statement provides that rejected lease/contract claims need to be filed before the date of Confirmation; however, these contracts will not be rejected until such time as the Plan is confirmed. [Disclosure Statement, p.23] The Disclosure Statement thus describes a process where creditors must presume what their rejection damages will be in advance of an uncertain rejection date. This procedural oddity effectively removes a right to recovery from any such creditor.

e. The feasibility analysis apparently presumes that the market values, liquidation values, secured claim amounts relating to each component of the Debtor's property are all basically the same, resulting in a zero dollar recovery for unsecured creditors in the feasibility analysis. [Disclosure Statement, p.15] This analysis is dubious, at best. The data was provided by Mr. Casey, and is untested by a qualified financial professional. As such, it fails to provide the estate's creditors with a valid liquidation scenario to consider when voting upon the Plan.

4

f. The Disclosure Statement states that the Debtor shall have certain rights to modify the Plan that are purportedly in excess of those rights provided by 11 U.S.C. § 1127; however, the "excess" rights as explained by the Debtor appear merely to mirror the rights of modification that are already codified in Section 1127. [Disclosure Statement, p.23] This provision of the Plan is confusing, and must be stricken. The Debtor's Plan modification rights should be limited to those set forth in the Bankruptcy Code.

g. The Disclosure Statement apparently contemplates (without clearly stating) that Mr. Casey is retaining his equity in the Debtor [Disclosure Statement, p.14]; however, the Disclosure Statement also provides that there may be "shortfalls in plan payments." [Disclosure Statement, p.16]. It is a violation of the absolute priority rule of 11 U.S.C § 1129(b)(2)(B)(ii) for Mr. Casey to retain equity in the event that any creditor does not receive payment in full under the Plan. If this is the Debtor's intent, the Disclosure Statement should clearly state; and if not, the Disclosure Statement should explain why Mr. Casey's retention of equity satisfies the absolute priority rule.

h. The Disclosure Statement provides that the Debtor will pay all administrative claims, including all attorneys' fees owed to the Debtor's attorneys, on the effective date of confirmation of the Plan. [Disclosure Statement, p.13] However, the Disclosure Statement fails to provide information regarding the fee application process for estate professionals. It is a violation of Fed. R. Bankr. Proc. 2016 for the Disclosure Statement and Plan to contemplate full payment to estate professionals outside of a court-approved fee application process.

i. John Casey is an insider, and 11 U.S.C. § 1129(a)(5) requires that the Disclosure Statement provide information regarding his continued role in the Debtor's operations and all compensation that will be paid to him post-confirmation. The Disclosure Statement fails to contain such information.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

## III. CONCLUSION.

UMB respectfully submits that approval of the Disclosure Statement must be denied until such time as the information deficiencies outlined above are addressed by the Debtor. Based on the foregoing, UMB respectfully requests that the Court enter an order:

    a.    Denying the approval of the Disclosure Statement; and

    b.    Granting UMB such other and further relief as the Court deems appropriate under the circumstances.

DATED this 1st day of May, 2017.

                        BRYAN CAVE LLP


                        By /s/ ALC, 030488
                            Kyle S. Hirsch
                            Amanda L. Cartwright
                            Two N. Central Avenue, Suite 2100
                            Phoenix, AZ 85004-4406
                            Attorneys for UMB Bank, n.a.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

| | |
|---|---|
| 1 | COPY served via email and/or US Mail this 1st day of May, 2017, upon: |
| 2 | Pernell W. McGuire, Esq. |
| | Preston Gardner, Esq. |
| 3 | Davis Miles McGuire Gardner, PLLC |
| | 40 E. Rio Salado Parkway |
| 4 | Ste. 425 |
| | Tempe, AZ 85281 |
| 5 | pmcguire@davismiles.com |
| | pgardner@davismiles.com |
| 6 | Attorneys for Green Fuel Technologies, L.L.C. |
| 7 | Renee Sandler Shamblin |
| | Office of the United States Trustee |
| 8 | 230 N. First Avenue, Suite 204 |
| | Phoenix, AZ 85003-1706 |
| 9 | renee.s.shamblin@usdoj.gov |
| 10 | Patrick A. Clisham, Esq. |
| | ENGELMAN BERGER, P.C. |
| 11 | 3636 N. Central Avenue, Suite 700 |
| | Phoenix, AZ 85012 |
| 12 | pac@eblawyers.com |
| | Attorneys for Titan Bank, N.A. |
| 13 | |
| 14 | |
| 15 | /s/ Sally Erwin |

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2100
PHOENIX, ARIZONA 85004-4406
(602) 364-7000